George M. Fanelli, J.
This is a proceeding brought under article 78 of the Civil Practice Act to review a determination of the respondents, constituting the Common Council of the City of Poughkeepsie, which denied petitioners a curb-lowering permit, and to direct the issuance of such permit for reasonable curb cuts in order to allow ingress and egress to a proposed gasoline station.
The material and relevant facts necessary for this decision appear to be undisputed. In March, 1957, the Common Council, in the performance of a legislative function, rezoned a certain area in which the property involved in this proceeding is located from R-5 (residential) to C-2 (general business). Thereafter, upon the filing of certain plans, petitioners applied to the Commissioner of Assessments and Building Inspector for a permit for the erection of a gasoline station. This application was denied and, as a result thereof, petitioners instituted an article 78 proceeding in this court for appropriate relief. By opinion, dated April 23,1958, Mr. Justice Ballet correctly held that petitioners were entitled to such a building permit as a matter of right since the property was then located in a C-2 district which permitted such a use. However, Mr. Justice Bailey refrained from directing the issuance of any curb-lowering permit incidental thereto for the reason that the issuance of such permits was not within the jurisdiction of the Building Inspector. Thereafter and *469 pursuant to an order of Mr. Justice Bailey, dated April 21,1958, the Building Inspector did on April 29,1958, issue and deliver to petitioners the said building permit without making any provision for curb cuts.
In the meantime, however, and on April 21, 1958, respondents enacted a new ordinance entitled: “An Ordinance Providing the Method and Manner of Obtaining Permits to Cut or Lower Curbs ” (Code of Ordinances of City of Poughkeepsie, ch. 67). This ordinance provided in effect that effective April 21, 1958, all curb-lowering permits must be issued by the Common Council. In accordance with this new ordinance and also by reason of a decision of Mr. Justice Eager, dated July 2, 1958, which denied petitioners’ application to direct the Superintendent of Public Works to issue the curb-lowering permit, the petitioners did make a formal application to respondents for such a permit. Hearings were held by respondents in connection with said application and on August 4, 1958, respondents denied the application upon the ground that such lowering or cutting of the curb (1) would cause a traffic hazard; (2) would change the character of the area; and (3) would not be in the interest of the public welfare. Such denial is the basis for the present proceeding.
At the outset the court wishes to note that it is not called upon to pass upon the propriety or wisdom of the March, 1957 ordinance rezoning the area in which the subject property is located. The court assumes that the ordinance was constitutionally and legally enacted. It stands unchallenged and the court is duty bound to take the ordinance as it finds it. The difficulty with the position taken by respondents and the citizens of the community who appeared in opposition to the curb-lowering permit and throughout this entire controversy, is the fact that the area in which the subject property is located has already been rezoned to a C-2 district by the very same body which has now declined to issue a curb-lowering permit, and that a building permit for the erection of a gasoline station has already been unconditionally issued. These opponents should not lose sight of the fact that in a C-2 district a property owner, as a matter of right, may use his property, in addition to a gasoline station, for any one of the following uses: grocery, drug and hardware stores; meat and fruit markets; barber and beauty shops; shoe repairing shops; laundry or dry cleaning establishments where no laundering or cleaning is to be done on the premises; business and professional offices; restaurants, taverns, motion picture theatres and other places of public assembly and amusement other than noise producing recreation areas.
*470 In the case at bar, considerations such as traffic hazards, change in the character of the area, and interests of public welfare are all matters which were before the Common Council when, in March, 1957, it rezoned the area from residential R-5 to C-2 business district. The court is of the opinion that the Common Council having granted petitioners a lawful right to use the property in question as a gasoline station, and a permit having been duly issued therefor unconditionally by the proper official of the city, the same Common Council (the respondents in this proceeding) cannot frustrate that use and that its function in this case in respect to the curb-lowering permit now sought by petitioners is merely ministerial, not legislative (see Matter of Oleet v. Hildreth, 286 App. Div. 886, affd. 1 N Y 2d 798 and cases cited therein), and that the permit should be granted to effectuate the gasoline station permit. While it may well be that in the usual case the council’s function in treating with applications for curb-lowering permits may be discretionary under chapter 67 of the Local Ordinances, nevertheless, in this case respondents were not empowered to reject the application in toto upon findings contrary to those of the same body implicit in the rezoning ordinance of March, 1957.
In the light of the afore-mentioned, the petition is granted, but without costs, and respondents are directed to issue petitioners a permit for reasonable curb cuts in connection with the construction of the gasoline station upon the property in question and for which the building permit has been issued. The court will not attempt to delineate the location and extent of any such curb cuts except to note that they should in all respects be reasonable bearing in mind all the peculiar facts and circumstances in this entire matter.
Settle order on notice.